## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN BELL,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.:24-840** |
| | : | |
| **v.** | : | |
| | : | |
| **ALLEGHENY COUNTY HOUSING** | : | |
| **AUTHORITY and JENNA ROBIN,** | : | |
| jointly and severally, | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

AND NOW, comes Plaintiff, Kevin Bell, by and through the undersigned counsel, J.P. Ward & Associates, LLC., and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendants, Allegheny County Housing Authority and Jenna Robin, of which the following is a statement:

## PARTIES

1.      Plaintiff, Kevin Bell (hereinafter "Plaintiff" or "Mr. Bell"), is an adult individual who currently resides at 190 Sycamore Drive, Apt. 113, Pittsburgh, Pa 15235.

2.      Defendant, Allegheny County Housing Authority (hereinafter "Defendant" or "ACHA") is an authority with a principal address of 301 Chartiers Avenue, McKees Rocks, PA 15136.

3.      Defendant, Jenna Robin, is an adult individual who, upon information and belief, resides in Allegheny County.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper as Plaintiff brings this lawsuit under the Americans with Disabilities Act (hereinafter, the "ADA"), 42 U.S.C. § 12101, *et seq*., the Age Discrimination in Employment Act ("ADEA"- 29 U.S.C. §621, et seq. 43 Pa. Cons. Stat. § 951 *et seq*., the Family Medical Leave Act of 1993 ("FMLA") 29 U.S.C. § 2601 *et seq*.,) and the Pennsylvania Human Relations Act (hereinafter, the "PHRA"),

5.      Plaintiff is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b) and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

6.      On November 3, 2023, Plaintiff dual filed his charge of discrimination the Equal Employment Opportunity Commission ("EEOC") respectfully under EEOC Charge Number 533-2024-00310.

7.      On March 11, 2024, the EEOC issued the Right to Sue to Plaintiff.

8.      Plaintiff has exhausted all his administrative remedies under the ADA and ADEA.

9.      Plaintiff intends to supplement his Complaint to include PHRA claims upon completion of the PHRC's investigation on or before September 20, 2024.  *Miller v. City Mission*, 2023 WL 9002732, at *5 (W.D. Pa. Dec. 28, 2023) (citing 43 P.S. § 962(c)(1)).

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

10.     Mr. Bell commenced his employment with Defendant in 1996 as a Property Manager. However, in 1999, Defendant terminated its Property Managers, including Mr. Bell, for reasons unknown.

11.     In 2004, Mr. Bell resumed employment with Defendant as a counselor.

12.     Around 2006, Mr. Bell transitioned back to the role of Property Manager.

13.     At all relevant times, Mr. Bell is a member of a protected class as a disabled individual, suffering from anxiety and depression, and was over forty (40) years old.

14.     Mr. Bell was highly qualified to perform the essential functions of his role as Property Manager, given his many years of experience, which led Defendant to rehire him.

15.     Defendant was aware of Mr. Bell's disabilities when he requested a medical leave of absence in the form of FMLA leave following an exacerbation of his symptoms.

16.     Defendant employs approximately twelve (12) property managers, along with assistant managers. These employees are supervised across three different regions.

17.     Mr. Bell and five other property managers worked in region three under the supervision of Tanya Brown ("Ms. Brown").

18.     Throughout his tenure, Mr. Bell typically managed at least two property sites. His responsibilities included, but were not limited to, rent collection, leasing units, paperwork administration, maintenance staff supervision, and addressing tenant and legal disputes.

19.     Mr. Bell managed Hawkins Village, a sizable family development in Rankin, Pennsylvania. Due to suboptimal conditions, Hawkins Village closed around the end of 2019, requiring Mr. Bell to assist in relocating all residents.

### a. **Defendant discriminated against Mr. Bell based on his disability and age.**

20.     During Mr. Bell's employment, Defendant failed to provide him with an assistant manager at any of his properties.

21.     This lack of support left Mr. Bell with insufficient time to complete all his job duties as a Property Manager, exacerbating his already overloaded workload.

22.     Mr. Bell, falling behind at his property sites due to the absence of an assistant manager, sought assistance from Ms. Brown.

23.     Regrettably, Ms. Brown consistently ignored his requests or responded by stating they were "working on hiring personnel."

24.     Similarly situated younger, non-disabled Property Managers received the necessary support to manage their workloads effectively in other regions.

25.     Defendant eventually provided Mr. Bell with a new assistant manager, Lee LNU (hereinafter referred to as "Lee"). However, Mr. Bell and Lee encountered significant communication challenges due to a language barrier. Lee also struggled to interact with residents and frequently deferred their inquiries to Mr. Bell, rendering Lee of limited assistance.

26.     Furthermore, Lee's assignment only covered Jefferson Manor and Sheldon Park for one day per week.

### b. **Defendant begins to discipline Mr. Bell in retaliation.**

27.     In or around January or February 2023, following Mr. Bell's multiple requests for assistance, Defendant retaliated against Mr. Bell by assigning him an additional property site, Jefferson Manor.

28.     Jefferson Manor comprises approximately 100 units and is situated in Penn Hills, Pennsylvania.

29.     Jefferson Manor's previous Property Manager had been on medical leave for an extended period, resulting in a substantial backlog at the property site.

30.     Consequently, Mr. Bell assumed responsibility for yet another property site, bearing a workload that proved impossible for him to manage effectively.

31.      As a result of the increased workload and the absence of adequate assistance, Mr. Bell began experiencing difficulties in fulfilling some of his work responsibilities, including challenges in responding to emails promptly and occasionally arriving late to agency meetings.

32.      Defendant was fully aware that it would be impossible for Mr. Bell to bring these additional sites up to date without becoming backlogged, inevitably setting Mr. Bell up for termination.

33.     On February 10, 2023, Ms. Brown took corrective action against Mr. Bell in the form of a written reprimand stemming from Mr. Bell discussing the financial services offered by his other insurance job with fellow employees.

34.     Defendant asserted that such actions constituted "stealing time," citing complaints from Mr. Bell's coworkers. However, this written reprimand was dated to have happened on March 10, 2023.

35.     On March 17, 2023, Ms. Brown, along with Defendant's Finance Director, Rich Stevenson ("Mr. Stevenson"), suspended Mr. Bell for alleged insubordination including but not limited to tardiness to the agency meeting, failure to respond promptly to emails, and for failure to perform a duty dated in October of 2022.

36.     It is pertinent to emphasize that Mr. Bell rarely took more than three days to respond to an email.

37.     Mr. Bell was never provided with a performance improvement plan by Defendant.

38.     Upon information and belief, similarly situated younger, non-disabled Property Managers were not reprimanded by Defendant for delayed email responses and late arrival at an agency meeting.

39.     As a result of his strenuous workload, Mr. Bell's disability and associated symptoms worsened. Mr. Bell endured these symptoms for several months until he reached a point where he could no longer bear them, prompting him to seek medical leave.

40.     On April 28, 2024, Ms. Brown contacted Defendant's Human Resource Manager, Jenna Robin ("Ms. Robin") seeking the termination of Mr. Bell under the guise of insubordination.

41.     Ms. Robin directed Ms. Brown to send her a list of Mr. Bell's alleged infractions so a decision could be made.

### c.   Mr. Bell invoked his right to a medical leave of absence for FMLA.

42.     On May 1, 2023, Mr. Bell emailed Ms. Robin and Human Resource Representative, Luke Lewis ("Mr. Lewis"), stating that he had a doctor's appointment scheduled for that afternoon at 3:00 p.m. He intended to discuss and complete the required FMLA paperwork with his doctor. Despite his notification, Mr. Bell received no response.

43.     On the same day, Ms. Brown sent Ms. Robin her list of alleged infractions against Mr. Bell.

44.     Mr. Bell called Defendant to inquire about the status of his FMLA leave request and why there had been no response. However, he received no answer.

45.     Defendant failed to respond to Mr. Bell's inquiries regarding his request for FMLA paperwork from Ms. Robin and Mr. Lewis.

46.     Upon information and belief, Mr. Bell's request for the FMLA paperwork was opened and viewed by Mr. Lewis and another Human Resources Representative, Jen LNU ("Ms. Jen").

**d.  <u>Defendant retaliated against Mr. Bell due to his need for leave under FMLA.</u>**

47.     On or about May 5, 2023, Mr. Bell's employment was terminated by Mr. Lewis, who had opened Mr. Bell's request for FMLA leave and was present at the termination meeting.

48.     At this meeting, the HR representative present stated that she "was just doing her job." HR also informed Mr. Bell that he could resign if he preferred, and that they would not challenge his unemployment, but that he had to leave his position either way.

49.     Defendant was fully aware of Mr. Bell's request for a medical leave of absence due to the exacerbation of his disabilities under the FMLA while deciding to terminate his employment, yet still chose to interfere with his rights under the FMLA and proceeded with his termination.

**COUNT I**
**DISCRIMINATION IN VIOLATION OF**
**THE ADA**
*(Plaintiff v. Allegheny County Housing Authority)*

50.     Mr. Bell incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

51.     To establish a prima facie case of discrimination under the ADA, Plaintiff must show: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations by the employer; and (3) she suffered an otherwise adverse employment decision as a result of

discrimination. See McGlone v. Philadelphia Gas Works, 17-1399, 2018 WL 2193658, at *2 (3d Cir. May 14, 2018) (citing Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998).

52.    Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

53.    A "qualified individual with a disability" is defined by the ADA as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

54.    A "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

55.    Furthermore, the ADA prohibits employers from taking any negative employment action against any employee "being regarded as having such an impairment." 42 U.S.C. § 12102.

56.    Mr. Bell is a disabled individual within the meaning of the ADA as he suffers from mental health issues, including anxiety and depression.

57.    Having been employed by Defendant for a number of years, across multiple positions, Mr. Bell was highly qualified for the position he held with Defendant.

58.    Defendant was fully aware of Mr. Bell's disability.

59.    Defendant regarded Mr. Bell as too disabled after he disclosed the symptoms associated with his disability were being exacerbated and requested FMLA leave.

60.     Mr. Bell faced the ultimate adverse action when Defendant's unlawfully terminated his employment under pre-textual reasoning.

61.     As a direct and proximate cause of the aforementioned conduct, Mr. Bell suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

62.     As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff, Kevin Bell, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs and reasonable attorney's fees.

## COUNT II
## FAILURE TO ACCOMODODATE IN VIOLATION OF
## THE ADA
**(***Plaintiff v. Allegheny County Housing Authority***)**

63.     Mr. Bell incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

64.      The elements of a claim for failure to accommodate an employee's disability are: (1) the employee was a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability.  It the plaintiff establishes these elements; the employer must prove that the requested accommodation would impose an undue hardship.

65.     Mr. Bell is disabled within the meaning of the ADA and the PHRA.

66.     Defendant was aware of Mr. Bell's disabilities.

67.     Defendant failed to reasonably accommodate Mr. Bell following his many requests for an assistant manager to help with his overwhelming workload and the management of the multiple properties.

68.     Mr. Bell's request for an assistant manager would not have been an undue hardship on Defendant as the other similarly situated non-disabled Property Managers had assistant managers to assist with their workloads.

69.     As a direct and proximate cause of the aforementioned conduct, Mr. Bell suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

70.     As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff, Kevin Bell, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs and reasonable attorney's fees.

**COUNT III**
**RETALIATORY TERMINATION IN VIOLATION**
**OF THE ADA**
**(***Plaintiff v. Allegheny County Housing Authority***)**

71.     Mr. Bell incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

72.     The ADA prohibits employers from retaliating against employees. 42 U.S.C. § 12203(a). To establish a claim for retaliation, Plaintiff must prove: (1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004); Lackey v. Heart of Lancaster Regl. Med. Ctr., 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

73.     Mr. Bell engaged in protected employee activities when he requested a medical leave of absence due to the exacerbation of his disabilities and an assistant manager to help with his overwhelming workload and the management of the multiple properties.

74.     Defendant's adverse action occurred within close temporal proximity with Mr. Bell's protected activities.

75.     Defendant's actions were retaliatory and bear a causal connection with Mr. Bell's real and/or potential needs of reasonable accommodation(s).

76.     The actions of Defendant were intentional, knowing, and in reckless disregard to the rights of Plaintiff.

11

77.     As a direct and proximate result of the aforementioned conduct, Mr. Bell suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

WHEREFORE, Plaintiff, Kevin Bell, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs and reasonable attorney's fees.

**COUNT IV**
**DISCRIMINATION IN VIOLATION**
**OF THE ADEA**
(*Plaintiff v. Allegheny County Housing Authority*)

78.     Mr. Bell incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

79.     Under the Age Discrimination in Employment Act (hereinafter "ADEA") it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.S. §623(a)(1).

80.     The ADEA defines an "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . [or] any agent of such a person." 29 U.S.C.S. §630(b).

81.     Under the ADEA, "statutory protection from discrimination extends to individuals who have reached the age of forty." United States EEOC v. Court of Common Pleas, 62 F. Supp. 3d 428, 436 (W.D. Pa. 2014 (citing 29 U.S.C.S. §631(a)).

82.     Claims under the ADEA "may proceed under a disparate-impact or disparate-treatment theory." Karlo v. Pittsburgh Glass Works, LLC, 849 F. 3d 61, 69 (3d Cir. 2017).

83.     In order to establish a disparate treatment claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., 557 U.S. 167, 176 (2009).

84.     Mr. Bell is a qualified individual over the age of forty.

85.     Mr. Bell suffered an adverse employment action in the form of termination from his position under pretextual reasoning.

86.     Upon information and belief, Plaintiff's similarly situated younger coworkers were not subjected to the same level of scrutiny as Mr. Bell.

87.     As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

88.     As a direct and proximate cause of the aforementioned conduct, Mr. Bell suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff, Kevin Bell, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs and reasonable attorney's fees.

## COUNT V
## FMLA INTERFERENCE
(*Plaintiff v. All Defendants, jointly and severally*)

89.     Mr. Bell incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

90.     The FMLA provides in pertinent part, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights, violation of which is known as FMLA retaliation. *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, at 307 (3d Cir. 2012) (citing to 29 U.S.C. § 2615(a)(1)).

91.     In order to demonstrate a claim for FMLA interference, a Plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citing *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F.Supp.2d 405, 446 (W.D. Pa. 2008); see also *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)).

92.     Moreover, an employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3rd Cir. 2012).

93.     Under this regulatory interpretation, employers are barred from considering an employee's FMLA leave "as a negative factor in employment actions such as hiring, promotions, or disciplinary actions." *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

94.     Mr. Bell was employed for a qualified employer under the FMLA and was therefore entitled to leave pursuant to the FMLA.

95.     On May 1, 2023, Mr. Bell invoked his right to a medical leave of absence under the FMLA due to the exacerbation of his disabilities when he emailed Defendant's Human Resource Manager, Jenna Robin and Human Resource Representative, Luke Lewis.

96.     The Department of Labor defines an "employer" under the FMLA as including "any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency." 29 C.F.R. § 825.104(a).

97.     "The regulations then explicitly provide that 'individuals such as corporate officers acting in the interest of an employer are individually liable for any violations of the requirements of FMLA." *Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408, 414 (3d Cir. 2012) (quoting 29 C.F.R. § 825.104(d)).

98.     Jenna Robin, acting in her capacity as Defendant's Human Resource Manager, interfered with Mr. Bell's rights to FMLA when they opened but refused to respond to his request for FMLA leave.

99.     Defendant violated Plaintiff's rights by interfering with and/or restraining the exercise of Mr. Bell's FMLA leave in direct violation of 29 U.S.C. § 2615(a)(1).

100.    As a direct and proximate result of the aforementioned conduct, Mr. Bell suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, and severe inconvenience all in the past present and future.

101.    As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Kevin Bell, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, specifically, Plaintiff requests this Court award him back pay, front pay, liquidated damages, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs and reasonable attorney's fees.

**COUNT III**
**FMLA RETALIATION**
*(Plaintiff v. All Defendants, jointly and severally)*

102.    Mr. Bell incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

103.    The Family Medical Leave Act of 1993 permits eligible employees to take up to twelve (12) work weeks for a serious health condition that makes the employee unable to perform the functions of his position. 29 U.S.C.A §2611(2), 29 U.S.C.A §2612(a)(1)(d).

104.    Allegheny County Housing Authority is classified as an "employer" subject to the requirements of the FMLA. "Employer" includes any "public agency" as defined in section 3(x) of the Fair Labor Standards Act of 1938, (29 U.S.C. § 203(x)) which includes "any agency of… a State."; 29 U.S.C. § 2611(4)(A)).

105.    90. In order to prevail on a claim of retaliation under the FMLA, one must prove that: "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein v. U. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012).

106.    Mr. Bell invoked his right to FMLA leave upon emailing Defendant's Human Resources Manager, Jenna Robin and Human Resources Representative, Luke Lewis on May 1, 2023.

107.    Mr. Bell is an eligible employee under 29 U.S.C.A §2611(2) who invoked his right to FMLA-qualifying leave for a serious health condition which affected his ability to perform the functions of his position.

108.    On May 5, 2023, Mr. Bell suffered an adverse employment decision in the form of termination of his employment under the guise of "insubordination" immediately following the invocation of his rights.

109.    Plaintiffs need only to show evidence that creates an inference that a causative link exists between the FMLA leave and termination. *Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 279-81 (3d Cir. 2000); see also, 29 U.S.C.A. § 2615(a)(2).

110.    97. "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…" *Lichtenstein v. U. of Pittsburgh Med. Ctr*., 691 F.3d 294, at 307 (3d Cir. 2012) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 232 (3d Cir. 2007)).

111.    Due to the temporal proximity of the actions taken by her superiors and Human Resources, there is more than an inference, and in fact a direct causal relationship between the termination of Mr. Bell's employment and the invocation of his FMLA rights.

112.    As a direct and proximate result of Defendant's unlawful acts, Mr. Bell suffered damages including back pay, front pay, and emotional distress.

113.    As a direct and proximate cause of the aforementioned conduct, Mr. Bell suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff, Kevin Bell, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, specifically, Plaintiff requests this

Court award him back pay, front pay, liquidated damages, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs and reasonable attorney's fees.

<b><u>COUNT VI</u></b><br><b>DISCRIMINATION IN VIOLATION OF THE PHRA</b>

114.    On November 3, 2023, Mr. Bell filed his Charge of Discrimination with the EEOC which was also dual-filed with the Pennsylvania Human Rights Commission ("PHRC"). This count has not yet been administratively discharged and will be joined by amendment upon completion of the PHRC's investigation.

<b><u>COUNT VII</u></b><br><b>RETALIATORY TERMINATION IN VIOLATION OF THE PHRA</b>

115.    On November 3, 2023, Mr. Bell filed his Charge of Discrimination with the EEOC which was also dual-filed with the Pennsylvania Human Rights Commission ("PHRC"). This count has not yet been administratively discharged and will be joined by amendment upon completion of the PHRC's investigation.

<b><u>COUNT IV</u></b>

<b>FAILURE TO ACCOMODODATE IN VIOLATION OF THE PHRA</b>

116.    On November 3, 2023, Mr. Bell filed his Charge of Discrimination with the EEOC which was also dual-filed with the Pennsylvania Human Rights Commission ("PHRC"). This count has not yet been administratively discharged and will be joined by amendment upon completion of the PHRC's investigation.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: June 5, 2024                    By:  _/s/ Joshua P. Ward, Esq._
                                      Joshua P. Ward (Pa. I.D. No. 320347)

                                      J.P. Ward & Associates, LLC
                                      The Rubicon Building
                                      201 South Highland Avenue
                                      Suite 201
                                      Pittsburgh, PA 15206

                                      *Counsel for Plaintiff*